# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

AISSA JACKSON,                                      Case No. 1:21-cv-

       Plaintiff,                                Honorable

v.

SPIRE HOSPITALITY, LLC.

       Defendant.

_____/

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW COOPER & ANDING
Attorneys for Plaintiff
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
Email: sdrew@dca-lawyers.com
Email: asturdivant@dca-lawyers.com

_____/

THERE IS NO OTHER CIVIL ACTION BETWEEN THESE PARTIES ARISING OUT OF THE SAME TRANSACTION OR OCCURRENCE AS ALLEGED IN THIS COMPLAINT PENDING IN THIS COURT, NOR HAS ANY ACTION BEEN PREVIOUSLY FILED AND DISMISSED OR TRANSFERRED AFTER HAVING BEEN ASSIGNED TO A JUDGE.

## COMPLAINT AND JURY DEMAND

## COMPLAINT AND JURY DEMAND

Plaintiff, Aissa Jackson, by and through her attorneys, DREW COOPER & ANDING, states as follows:

### JURISDICTION

1.    This action arises pursuant to 42 U.S.C. § 1981, and the Civil Rights Act of 1866; and, 42 U.S.C. § 1988. Jurisdiction is specifically conferred on this Court by the aforementioned statutory provisions.

2.    The federal subject matter jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1332(a) as the parties are completely diverse from one another.

3.    The federal subject matter jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1331 because this action is brought for violations of 42 U.S.C. §1981, a federal statute.

4.    The jurisdiction of the Court is further invoked pursuant to 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. §1343.

5.    The unlawful employment practices alleged in this Complaint were committed within the judicial district of the Western District of the State of Michigan, therefore venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2).

6.    The Court has personal jurisdiction over Defendant because Defendant is licensed to transact and does transact business in this District and has carried out violations of 42 U.S.C. §1981 in this District.

7.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims

within the original jurisdiction of this Court that they form part of the same case or controversy.

8.    Plaintiff Aissa Jackson has a Charge of Discrimination pending with the Equal Employment Opportunity Commission (EEOC) and has not yet received Notice of Right to Sue regarding the aforementioned claims.

9.    Equitable and other relief are sought under the aforementioned statutory provisions.

## PARTIES

10.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

11.   Plaintiff Aissa Jackson is an African American female and a citizen of the United States and the State of Michigan, and resides in the City of Grand Rapids, County of Kent, which is within the territorial limits of the United States District Court for the Western District of Michigan.

12.   Plaintiff Aissa Jackson was at all relevant times an employee of Defendant Spire Hospitality, LLC.

13.   Defendant Spire Hospitality, LLC is a duly licensed corporation organized under the laws of the state of Delaware, qualified to do business in the State of Michigan and was at all relevant times conducting business within the City of Grand Rapids, County of Kent, which is within the territorial limits of the United States District Court of the Western District of Michigan.

14.   Defendant Spire Hospitality, LLC was at all relevant times the employer of Plaintiff Aissa Jackson.

## STATEMENT OF FACTS, CLAIMS, AND VIOLATIONS

15.   Plaintiff realleges and incorporates by reference the allegations contained in the previous

paragraphs.

16.   Plaintiff Aissa Jackson, an African American woman, began employment with Defendant Spire Hospitality, LLC on or about September 25, 2013.

17.   During Plaintiff's employment with Defendant, Plaintiff was subjected to an unwelcomed and unwanted hostile work environment marked with racial discrimination and sexual harassment.

18.   In or around 2017, Plaintiff began working with a male co-worker named Deandre Love who worked as a kitchen supervisor.

19.   While working her shifts from 2017 until her termination, Mr. Love regularly subjected Plaintiff to lewd and unwanted comments of a sexual nature about her body and weight, and continuous sexual innuendos.

20.   Plaintiff also observed Mr. Love make similar lewd and unwanted comments of a sexual nature and sexual innuendos toward other female employees.

21.   Beginning in or around August 2017, Plaintiff reported Mr. Love's unwelcome misconduct to several of Defendant's representatives, including but not limited to:

    a.   Tracy Davidson, Defendant's Bar Supervisor; and,

    b.   Tatiana Lamarr, Defendant's Manager.

22.   In August 2017, Ms. Lamarr told Plaintiff that she discussed Mr. Love's misconduct with Colin McPhee (Mr. Love's supervisor).

23.   Ms. Lamarr assured Plaintiff that Mr. Love's misconduct would no longer be a problem.

24.   However, the sexually hostile work environment continued after this conversation.

25.   In August 2017, Mr. Love pressed and rubbed his genitals against Plaintiff while saying he wanted to "show her how to cut pineapple."

26.   Plaintiff reported Mr. Love's misconduct to Ms. Lamarr following this incident.

27.    To the best of Plaintiff's knowledge, recollection, and belief, no remedial action was taken against Mr. Love.

28.    In or around December 2017, a male employee who served as Defendant's Banquet Manager, Hopeton Prendergrast, made comments of a sexual nature to Plaintiff and other female employees about the size of their banquet shirts and how he "didn't mind them being tight so he could see everything."

29.    Mr. Prendergrast made these comments in front of Defendant's Banquet Supervisor, Megan Andres.

30.    Plaintiff replied to Mr. Prendergrast in a manner that made it clear she wanted him to stop making comments of that nature to her and the other female employees.

31.    Although Ms. Andres heard the exchange, she did not take any action to oppose the offensive and inappropriate comments by Mr. Prendergrast.

32.    To the best of Plaintiff's knowledge, belief, and understanding, no remedial action was taken by Defendant in response to Mr. Prendergrast's inappropriate comments.

33.    In or around January 2018, Mr. Love's misconduct continued when he repeatedly made comments regarding Plaintiff's anatomy (buttocks) and weight.

34.    Mr. Love also frequently told Plaintiff she needed to wear tighter pants.

35.    Once again, Plaintiff reported Mr. Love's behavior to her manager, Tatiana Lamarr, and to the Bar Supervisor, Tracy Davidson.

36.    To the best of Plaintiff's knowledge, belief, and understanding, none of Defendant's representatives implemented sufficient remedial or corrective measures to address Mr. Love's unwanted sex-based comments and actions.

37.    Mr. Love continued his practice of making unwanted comments of a sexual nature towards

Plaintiff for the duration of her employment with Defendant.

38.    Each time Plaintiff complained, Mr. Love's comments did not cease and in fact became more frequent.

39.    In or around March 8 or 9, 2018, while in a storage room getting supplies, Mr. Love, without Plaintiff's consent, kissed Plaintiff directly on the lips and cheek.

40.    Plaintiff turned away from Mr. Love in embarrassment and disgust and Mr. Love told her, "I told you I was going to get you."

41.    Plaintiff believed Mr. Love's conduct and comments were of a sexual nature as he frequently made inappropriate and unwelcome comments to Plaintiff and other female employees but did not make similar comments to any male employees.

42.    On approximately March 8 or 9, 2018, Plaintiff contacted Defendant's Human Resources department by email requesting a meeting to make additional reports regarding Mr. Love's unwelcome harassment and behavior.

43.    On approximately March 8 or 9, 2018, Defendant's Human Resources department responded to Plaintiff, "Ok," but the meeting did not occur.

44.    Five days later, on or around March 13, 2018, Defendant terminated Plaintiff's employment.

45.    During her employment, Plaintiff was also subjected to a racially discriminatory and hostile work environment.

46.    As early as 2014, Plaintiff witnessed many of Defendant's Caucasian employees using derogatory language when communicating with one another about food orders or staff mistakes; however, none of this behavior was punished.

47.    Caucasian employees regularly subjected Plaintiff to language including unwelcome and unnecessary profanity when she would change a food order at a guest's request.

48.    Caucasian employees also subjected Plaintiff to inappropriate and demeaning language, including unwelcome and unnecessary profanity, when Plaintiff would try to communicate with fellow staff regarding general work tasks.

49.    This work environment of hostility towards Plaintiff continued for weeks.

50.    Plaintiff reported these interactions to her direct supervisor, and to the best of her knowledge no actions were taken against the Caucasian employees.

51.    In or around 2018, Plaintiff along with two other African American employees were tasked to handle banquets for specific customers because of their race and their ability to "handle" certain groups.

52.    Many of these groups of customers were African American.

53.    On multiple occasions, Tracy Davidson, a Caucasian supervisor, made racially offensive and derogatory comments to Plaintiff regarding African American customers and the African American race generally including, but not limited to:

a.    "they don't tip anyway;"

b.    "because of 'those' people, my husband's not going to get a paycheck;" and,

c.    "see, I have black in me too, that's why I have curly hair."

54.    Plaintiff reported Ms. Davidson's comments and behavior to Ms. Lamarr.

55.    To the best of Plaintiff's knowledge, belief, and recollection, no action was taken against Ms. Davidson for creating a racially hostile work environment.

56.    On or around March 12, 2018, Plaintiff was accused by Defendant of raising her voice toward a Bartender (Caucasian, female). In the alleged argument, the Caucasian employee engaged in behavior that included derogatory language and inappropriate conduct.

57.    However, the Caucasian employee with whom Plaintiff was allegedly arguing was, to the best

of Plaintiff's knowledge, not disciplined or terminated.

58. As mentioned previously, behavior including derogatory language and inappropriate conduct was commonplace among Defendant employees and, to the best of Plaintiff's knowledge, no Caucasian and/or male employee was terminated as a result of engaging in this type of behavior, while Plaintiff, an African American female, was terminated.

59. On March 13, 2018, Plaintiff's employment was terminated by Defendant Spire Hospitality, LLC.

60. Upon information and belief, Plaintiff was terminated following the aforementioned argument for creating an intimidating, hostile, or offensive working environment and for disrespectful or discourteous conduct toward customers or staff.

61. Plaintiff disagreed with Defendant's characterization of the situation and did not create an intimidating, hostile, or offensive working environment and was not disrespectful or discourteous toward her co-workers.

62. Moreover, when Plaintiff was subject to and complained of sexual harassment, disrespectful or discourteous conduct from co-workers, including male and non-African American co-workers, those individuals were not disciplined nor was their employment terminated by Defendant.

63. Plaintiff believes her termination was in retaliation for opposing sexual harassment and a hostile work environment.

64. Plaintiff also believes her termination was based on her race as she was terminated for the same or similar behavior that Caucasian employees engaged in, yet the Caucasian employees were not subject to discipline or termination of their employment.

65. For example:

a.  In or around October 2015, the Sous Chef employed by Defendant (a Caucasian male) raised his voice toward a female employee causing her to cry. Defendant's Human Resources department and management level employees were made aware of the situation. However, the Sous Chef was not disciplined for his inappropriate behavior and was later promoted to Executive Chef. The Sous Chef's employment was not terminated.

b.  In or around late 2017, a server employed by Defendant (Caucasian, female) raised her voice and used obscenities toward the Executive Chef (Caucasian male). The server was disciplined in writing, but the server's employment was not terminated.

c.  On or around March 1, 2018, the Executive Chef, a white male, used a sexually derogatory expletive toward a female employee who worked as a Prep Cook. Mr. McPhee's misconduct was reported to one of Defendant's Human Resources. However, Mr. McPhee was not fired for using the sexually derogatory expletive toward the female employee and to the best of Plaintiff's knowledge, Mr. McPhee remains employed with Defendant.

66.  On May 31, 2018, Plaintiff filed a Charge of Discrimination with the EEOC (Charge No. 23A-2018-10415C) including complaints of discrimination, harassment, discharge, and retaliation based on race and sex.

67.  This Charge of Discrimination is still pending and being investigated by the Equal Employment Opportunity Commission.

68.  Plaintiff intends to amend her Complaint to add claims based on 42 U.S.C. § 2000e *et seq*., The Civil Rights Act of 1991 (Title VII claims) upon receipt of her Notice of Right to Sue.

**COUNT I**
**DISCRIMINATION - HOSTILE ENVIRONMENT**
**42 U.S.C. § 1981**

69.    Plaintiff realleges and incorporates by reference the allegations contained in the previous

        paragraphs.

70.    The actions by Defendant Spire Hospitality, LLC occurred in whole or in part on account

        of Plaintiff's race, and on that basis were performed intentionally and in a discriminatory

        manner as compared to other similarly situated non-African American employees.  Thus,

        Defendant Spire Hospitality, LCC, through its managers, employees, agents and/or assigns,

        violated 42 U.S.C. § 1981.

**COUNT II**
**DISCRIMINATION - RETALIATION**
**42 U.S.C. § 1981**

71.    Plaintiff realleges and incorporates by reference the allegations contained in the previous

        paragraphs .

72.    Defendant Spire Hospitality, LLC, through its employees, agents, managers, and/ or

        assigns, discriminated and/or retaliated against Plaintiff in the terms and conditions of her

        employment, including but not limited to more significant and severe discipline than non-

        African Americans, and being terminated after making complaints to Defendant's Human

        Resource Department about the harassment she endured and/or opposed in violation of 42

        U.S.C. § 1981.

**STATE LAW CLAIMS - SUPPLEMENTAL JURISDICTION**

**COUNT III**
**SEX BASED HARASSMENT - HOSTILE WORK ENVIRONMENT**
**ELLIOTT-LARSEN CIVIL RIGHTS ACT[1]**

73.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

74.     During the course of Plaintiff's employment with Defendant Spire Hospitality, Plaintiff was subjected to the aforementioned unwelcomed derogatory and sexually offensive comments and other conduct based on Plaintiff's sex by employees, agents, managers, and/ or assigns of Defendant Spire Hospitality, LLC.

75.     The aforementioned unwelcomed derogatory and sexually offensive comments and other conduct based on Plaintiff's sex had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

76.     Defendant Spire Hospitality, LLC had both actual and constructive notice its employees, agents, managers, and/ or assigns, were creating a hostile and offensive work environment.

77.     Despite having notice of the conduct, Defendant Spire Hospitality, LLC, failed to adequately investigate and take prompt and/or appropriate remedial action.

78.     The ELCRA prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment, because of the employee's gender. MCL 37.2202(1)(a).

79.     By the acts described above, Defendant through its employees, agents, managers, and/ or assigns violated the Elliott-Larsen Civil Rights Act.

---

[1] "ELCRA"

80.   Defendant further violated the Elliott-Larsen Civil Rights Act in that:

a.   Defendant failed to provide Plaintiff with employment conditions and relationships where she could safely work free from physical, verbal, and mental harassment and/or discrimination based on sex;

b.   Defendant failed to comparatively discharge, suspend, reprimand or otherwise discipline employees for their actions of harassment and/or discrimination based on the sex of Plaintiff; and,

c.   Defendant otherwise failed to comply with statutory and/or common law.

81.   Such conduct has denied Plaintiff equal protection and civil rights guaranteed by ELCRA, and the laws and Constitution of the State of Michigan.

## COUNT IV
## RACE BASED HARASSMENT - HOSTILE WORK ENVIRONMENT
## ELLIOTT-LARSEN CIVIL RIGHTS ACT

82.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

83.   The ELCRA prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment, because of the employee's race. MCL 37.2202(1)(a).

84.   During the course of Plaintiff's employment with Defendant Spire Hospitality, LLC, Plaintiff was subjected to the aforementioned unwelcomed derogatory and racially offensive comments and other conduct based on Plaintiff's race by employees, agents, managers, and/ or assigns of Defendant Spire Hospitality, LLC.

85.   The aforementioned unwelcomed derogatory and racially offensive comments and other conduct based on Plaintiff's race had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

86.   Defendant Spire Hospitality, LLC had both actual and constructive notice its employees,

- 12 -

agents, managers, and/ or assigns, were creating a hostile and offensive work environment.

87. Despite having notice of the conduct, Defendant Spire Hospitality, LLC, failed to adequately investigate and take prompt and/or appropriate remedial action.

88. The ELCRA prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment, because of the employee's race. MCL 37.2202(1)(a).

89. By the acts described above, Defendant through its employees, agents, managers, and/ or assigns violated the Elliott-Larsen Civil Rights Act.

90. Defendant further violated the Elliott-Larsen Civil Rights Act in that:

    d.    Defendant failed to provide Plaintiff with employment conditions and relationships where she could safely work free from physical, verbal, and mental harassment and/or discrimination based on race;

    e.    Defendant failed to comparatively discharge, suspend, reprimand or otherwise discipline employees for their actions of harassment and/or discrimination based on the race of Plaintiff; and,

    f.    Defendant otherwise failed to comply with statutory and/or common law.

91. Such conduct has denied Plaintiff equal protection and civil rights guaranteed by the ELCRA, and the laws and Constitution of the State of Michigan.

## COUNT V
## SEX-BASED DISCRIMINATION
## ELLIOTT-LARSEN CIVIL RIGHTS ACT

92. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

93. The aforementioned acts by Defendant Spire Hospitality, LLC, through its employees, agents, managers and/or assigns, constitute discrimination against Plaintiff regarding the terms and conditions of her employment on the basis of her sex and on that basis were performed intentionally and in a discriminatory manner as compared to other similarly

situated employees, thereby subjecting her to a hostile environment based on sex which interfered with her employment. By said acts, Defendant has violated Michigan common and/or statutory law, including specifically the Elliott-Larsen Civil Rights Act, M.C.L. §37.2101 *et seq.*; M.S.A. §3.548(101) *et seq.*

94. Such conduct has denied Plaintiff equal protection and civil rights guaranteed by the ELCRA and the laws and Constitution of the State of Michigan.

## COUNT VI
## RACE BASED DISCRIMINATION
## ELLIOTT-LARSEN CIVIL RIGHTS ACT

95. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

96. The aforementioned acts by Defendant Spire Hospitality, LLC, through its employees, agents, managers and/or assigns, constitute discrimination against Plaintiff regarding the terms and conditions of her employment on the basis of her race and on that basis were performed intentionally and in a discriminatory manner as compared to other similarly situated employees, thereby subjecting her to a hostile environment based on race which interfered with her employment. By said acts, Defendant has violated Michigan common and/or statutory law, including specifically the Elliott-Larsen Civil Rights Act, M.C.L. §37.2101 *et seq.*; M.S.A. §3.548(101) *et seq.*

97. Such conduct has denied Plaintiff equal protection and civil rights guaranteed by the ELCRA and the laws and Constitution of the State of Michigan.

## COUNT VII
## RETALIATION
## ELLIOTT-LARSEN CIVIL RIGHTS ACT

98. Plaintiff realleges and incorporates by reference the allegations contained in the previous

paragraphs.

99.  Plaintiff was subjected to retaliation by Defendant Spire Hospitality, LLC because she complained of unlawful acts of discrimination and/or harassment in violation of the Elliott-Larsen Civil Rights Act.

100.  ELCRA prohibits acts of retaliation against individuals who have exercised their rights or taken a stance against unlawful conduct under the statute. M.C.L. §37.201

101.  Plaintiff engaged in a protected activity when she complained of unlawful acts of discrimination and harassment in violation of ELCRA, Title VII, and 42 U.S.C. §1981.

102.  Defendant was aware of Plaintiff's protected activity because Plaintiff complained directly to Defendant's employees, agents, managers, and/ or assigns.

103.  Defendant took an adverse employment action against Plaintiff after Plaintiff complained of unlawful discrimination and harassment.

104.  Defendants acts of adverse action included but was not limited to

a.  Plaintiff receiving more significant and severe discipline than non-African American employees or male employees and,

b.  Plaintiff being terminated after making complaints to Defendant's Human Resources Department about the harassment Plaintiff endured or opposed.

105.  There is a causal link between Plaintiff's complaints of unlawful discrimination and harassment and her unfair discipline and termination as these acts of retaliation would not have occurred had Plaintiff not engaged in protected activity pursuant to the Elliott-Larsen Civil Rights Act.

## **DAMAGES**

106.    Plaintiff realleges and incorporates by reference the allegations contained in the previous

paragraphs.

107.    As a direct and/or proximate result of the aforementioned actions and inactions by

Defendant, Plaintiff sustained injuries including but not limited to, mental anguish, fright,

shock, embarrassment, humiliation, mortification, damage to reputation, disruption of

personal life, loss of enjoyment of the ordinary pleasures of living, possible loss of earning

capacity, and other damages known and unknown.

108.    As a direct and/or proximate result of the aforementioned actions and inactions by

Defendant, Plaintiff has been deprived of wages, loss of income, earning capacity, and

other employment benefits, including,  but not limited to, prospective retirement benefits,

other insurance coverage, holiday and vacation pay, social security insurance, training

opportunities, other promotional benefits, other fringe benefits, and, other damages known

and unknown, causing Plaintiff to suffer considerable financial distress and hardship.

WHEREFORE, Plaintiff Aissa Jackson seeks all appropriate damages against Defendant

Spire Hospitality, LLC arising out of law, equity, and fact for each or all of the above counts where

applicable and requests that the trier of fact award Plaintiff all applicable damages, including but not

limited to compensatory, exemplary, and/or punitive and all other relief arising out of law, equity and

fact according to statutory and common law, including interest, costs, and attorney fees.

Respectfully submitted,

Dated: March 12, 2021                    By:  */s/ Stephen R. Drew*
                                                           Stephen R. Drew (P24323)
                                                           Adam C. Sturdivant (P72285)
                                                           DREW COOPER & ANDING

- 16 -

Attorneys for Plaintiff
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
Email: sdrew@dca-lawyers.com
Email: asturdivant@dca-lawyers.com

## **JURY DEMAND**

Plaintiff, Aissa Jackson, by and through her attorneys, DREW COOPER, & ANDING,

hereby demands a trial by jury on all claims set forth above.

Respectfully submitted,

Dated: March 12, 2021

By: */s/ Stephen R. Drew*

      Stephen R. Drew (P24323)
      Adam C. Sturdivant (P72285)
      DREW COOPER & ANDING
      Attorneys for Plaintiff
      80 Ottawa Avenue NW, Suite 200
      Grand Rapids, Michigan 49503
      Phone: (616) 454-8300
      Email: sdrew@dca-lawyers.com
      Email: asturdivant@dca-lawyers.com